from the District of Minnesota, Thomas Matula, Jr. v. Wells Fargo & Company, et al. All right, good morning. Mr. Tarios, we'll hear from you first. Good morning, and may it please the Court, Mr. Hershaw. Alfredo Tarios, on behalf of Plaintiff Appellant Thomas Matula. This appeal presents three errors by the District Court, each independently requiring reversal. The first is procedural. Defendants labeled their challenge as a facial 12b-1 motion. A facial 12b-1 motion, as this Court is aware, complies the Court to the pleadings, and the Plaintiff receives Rule 12b-6 protections. Yet the District Court consulted extrinsic evidence submitted by defendants, and resolved the disputed meeting of expenses of the plan against Mr. Matula. Under Osborne and Carlson, that is reversible error. The second error is analytical. The Court did not decide whether Mr. Matula alleged a concrete injury. It decided what the plan means. That is a merits question, not a standing question. Again, Carlson makes this distinction explicit. The third is structural. Even under the true facial review, Mr. Matula has standing. This is a defined contribution plan, not a defined benefits plan. Section 6.5 of the plan gives the administrator, quote, sole discretion among three forfeiture options. Defendant chose exclusively the option that gave Wells Fargo a dollar-for-dollar reduction in its corporate funding obligations. That was $2.02 million in 2022 alone. While plan-level investment expenses on unallocated assets continued to be netted against planned returns. That is a concrete, traceable, redressable economic injury. And at a bare minimum, a dismissal for lack of subject matter jurisdiction cannot be entered with prejudice, which was done here. County of Mille Lacs v. Benjamin tells us that. That error alone requires that the case be reversed. So your first issue, you were essentially talking about the planned documents? Yes. Is that right? Why wouldn't those be encompassed by the complaint? They absolutely are, Your Honor. The court can look at those planned documents. And in fact, Carlson teaches us that, as does Osborne. But it cannot make a decision as to what those documents mean. Okay. Well, that gets us past your first issue, I think. Well, my first issue is not merely that the court looked at planned documents. It resolved the disputed meaning of expenses of the plan. But that's perhaps being persnickety on my end. The issue, though, stands, which is, can the court look at planned documents? Absolutely. Two of the judges here in the UnitedHealth case, you know, discussed an issue where the court looked at planned documents. But there, there was no contention as to excuse me, I should have said Smith v. UnitedHealth, excuse me. There was no dispute as to what the planned verbiage in that case meant. Here, again, the court explicitly determined that expenses of the plan is limited to administrative expenses, which were paid completely by Wells Fargo here. And the court therefore concluded, as a matter of logic, that there can be no injury because there was nowhere else for the forfeiture amounts to be credited. As we set forth during oral argument... What's your best case that says the court may look at the planned documents but cannot construe them? My best case for that, Your Honor, would be, give me one second here. It would be the Braden v. Walmart stores case. All right. Do you think it says that? What does it mean to look at the documents if you can't apply what they mean? Well, because, again, if we're under the protections of 12b-6 on a facial review, the question would be, is there a sufficient allegation under Twombly and Iqbal to support a claim here? Now, if the planned documents say something that is clearly the opposite and that there's no contesting as to its meaning, then there's no merits determination as to what the planned documents say, and therefore the court would be free to apply it. But here we argue that, in fact, expenses of the plan can include expenses of unallocated investments. Now, we're not saying that the individual investment decisions made by participants qualify, because participants can choose an investment device that has a higher fee and so forth. But the unallocated ones, the ones that are basically owned by the plan itself, those are expenses of the plan. Well, what about on a motion to dismiss or failure to state a claim? Do you agree at that stage the court may construe the contract? The court, again, if there's... Or the plan, I should say. But it would be effectively construing a contract, yes, Your Honor. The court cannot construe the contract if it would result in a merits determination. No, no. I'm saying if there were a motion to dismiss or failure to state a claim on the merits. Again, the question then, here we have two levels, right? The court says that we showed expenses that were planned incurred, meaning for the unallocated investments. The court said those do not qualify as expenses of the plan. The court there would be making a factual determination as to whether, in fact... Well, isn't that a legal determination based on the contract language? It seems entirely permissible on a motion to dismiss for failure to state a claim. That is correct, Your Honor, but the question as to whether there are expenses, existing expenses that fall into that definition, whatever definition... Aren't we arguing about the definition of expenses? We are arguing about the definition because the court, in order to reach its conclusion, the court had to define away any investment-related expenses. Let's, for a moment, let's assume that we would agree with you that the court made an error at this stage by interpreting it to just be administrative expenses. Did you identify in the pleading any expenses specific to Mr. Metulla that he would have incurred? No, we did not. That could have been reimbursed? We did not identify any in our complaint. Isn't that sufficient to show no harm to him? Or at least you haven't pled a harm to him. We haven't pled a harm to him. And as we noted in our briefing, we requested leave to amend to identify these unallocated expenses. Did you comply with the local rule and submit a proposed amended complaint? No, we did not, Your Honor. But again, you know... Well, why isn't that the end of the case? If you're conceding you didn't plead any injury to your client and you didn't follow the local rule on amendment, what's left? Well, Your Honor, we are arguing that these unallocated investment expenses are plan level, meaning every plan member has a harm, you know, for what those unallocated investment expenses are. And so the fact that it's not in our complaint explicitly doesn't mean that it's not something that we could have pled had we, you know, been requested to provide more detail on it. Touching on the district court's order quickly, the plan itself, again, allows expenses of the plan. And the court, to the point by Your Honor with regard to looking at the pleadings, the court could look at the plan which was embraced by the pleadings, but again, the distinction I am attempting to make is that the court cannot conflate the Article III injury standing requirements with our causes of action, which is what we're asserting was done here, which is the court said we have no claim because the court... I understand that point. If you're correct about that, though, does that just mean that the disposition was incorrect described as lack of standing and it should have been described as failure to state a claim? And it could be affirmed on that basis since the judge dismissed with prejudice anyway? Well, again, that would require this court to accept that interpretation of the plan. Right. I mean, that's a premise of my question. But the premise of your question... And that court agreed with that interpretation of the plan. I agree. Under Carlson v. GameStop, the court can move on to a 12B6 analysis if it finds that it clearly is, that we clearly were not able to state a claim here. So I would agree with that, Your Honor. You just disagree with that interpretation of the plan, as I understand it. That is correct, Your Honor. Unless there are any specific questions, I'll reserve the rest of my time. Thank you. Very well. Thank you for your argument. Mr. Hirshhorn, we'll hear from you. Thank you, Your Honor. Mr. Hirshhorn, I would like to ask you to comment on the second argument. The second argument is that the statute of limitations of the plan relies on ignoring the plain meaning of the phrase, quote, expenses of the plan, as used in Section 6.5 of the plan document. And that argument is both procedurally and substantively deficient. And the third argument, Your Honors, is that if this Court were to conclude somehow that Mr. Mottola has established standing, which we, of course, do not think he has, this Court can and should conclude that the complaint fails to state a plausible claim for relief, as the colloquy just suggested, either on the grounds that Judge Thunheim concluded below or, alternatively, on the same grounds that more than 30 courts around the country have already dismissed virtually identical claims. The consensus is overwhelming, Your Honors. There is nothing unlawful about using forfeitures to reduce employer contributions, and there is no duty to maximize participant benefits beyond what the plan document provides. The Department of Labor has endorsed this analysis and made clear, very clear, that the decision to use forfeitures to offset future matching contributions does not state a plausible claim for a breach. Since you're leading with the argument that the plaintiff lacks standing, why wouldn't that result in a dismissal without prejudice, since it means the Court lacked jurisdiction? Your Honors, I would not begin to dispute that proposition. If Your Honors are so inclined to — if Your Honors are inclined to conclude that Mr. Mottola does not have an argument and an instruction to amend the judgment or the order to be without prejudice, that's certainly an option for Your Honors to consider. Let me ask you this. On the standing, the district court construed the pay the expenses of the plan to just be administrative expenses. Can you square that, which is contrary to their theory, can you square that with Carlson, where we say that at this stage we should accept the theory of the plaintiffs? I had, Judge Gruner, and I think there are a few points I would like to make in response to your question. The first, and it should not be lost, Your Honors, is that this argument has been waived in the court below. Mr. Mottola raised for the first time at oral argument this idea that there are plan expenses that could include certain fees associated with unallocated assets. It appeared nowhere in the briefing. At oral argument before the district court? Yes, excuse me, before Judge Thunheim. Thank you. It appeared for the first time at oral argument before Judge Thunheim, and having not preserved it below, it clearly is not proper for the court here. But even if the court were to consider the argument now, the theory suffers from a lack of redressability. And if you'll allow me, I'd like to explain. Mr. Mottola has not alleged a redressable harm. On page 12 of his reply brief, and I will quote the exact words here, Mr. Mottola states, quote, the pleaded injury is that defendants chose a forfeiture disposition that reduced plan assets and foreclosed participant protective uses expressly authorized by the plan. Uses that, if implemented, would increase net plan assets and, in a defined contribution plan, participant account values. Close quote. But there is no mechanism, Your Honors, in the plan document that would allow for extra contributions to be made to participant accounts. Mr. Mottola's position reflects a fundamental misunderstanding of how defined contribution plans work. In a defined contribution plan like the Wells Fargo 401k plan, you have employee contributions, and sometimes, like in the generous case of Wells Fargo, you have employer matching contributions. That is the sum total of assets, what Mr. Mottola puts in, and if there's a match here. The match is dictated by Section 5.1a of the plan, up to 6 percent of eligible compensation. That is further constrained by the limitation in 5.1d of the plan that says Wells Fargo's contribution obligation only goes so far as there are not available forfeitures to make that contribution. There is no mechanism, there is no mechanism to provide Mr. Mottola with an extra contribution. So even if we accepted Mr. Mottola's strained reading, shall we say. But I guess the question is, does that mean that he loses on the merits because his argument about the plan is wrong, or does it mean that he lacks standing? Oh, I think he lacks standing, Your Honor, for a lack of redressability, for sure. Let me ask it this way. Had they pledged some specific expenses that Mottola could have incurred, I don't know if they exist or not, but had they pledged something like that that could have been reimbursed to him from these forfeited funds, wouldn't he perhaps then have standing? He might have harm, but he may not have, I mean, he might have redressability under your hypothetical judgment, but number one, he hasn't, and number two, I don't know what those expenses would be because the investment management fees, the other reading that he affords to expenses of the plan, he concedes in his opening brief on page three and page ten that expenses of the plan are charged to his plan. There is no pool of assets here, like in a defined benefit plan, a traditional defined benefit plan where somebody might get $1,000 a month as an annuity or $500 a month as an annuity based upon compensation years of service pursuant to some formula. This plan is a function of the contributions made by Mr. Mottola and the 250,000 other active participants, as well as the matching contribution made by Mr. Mottola. So if we concluded that he hasn't pled any harm, we think there's a real redressability problem, but, Judge Carlton, again, back to your question, your Honors couldn't very well affirm on 12B6 grounds, as I think you alluded to earlier, if it concluded that Mr. Mottola had pled harm even though he conceded that he has not. Right, we could. We have to wrestle, though, with whether they're standing, and that's why we're asking you. Go ahead, Judge Coleman, do you have a question? On the 12B6, I'm going to ask you about that, on the merits. On the anti-inheriment claim, what's your argument that there was a failure to state a claim there? I say we don't find the argument waived. What's your best argument for a conclusion that there was a failure to state a claim there? First of all, I accept that you want to bypass the waiver. I'm familiar with the waiver arguments. What I'm less clear on, in my mind, is if those don't work, where do I go? There has been no reversion here to Wells Fargo. These are forfeitures that sit in the plan that, pursuant to the plan terms, have never left the plan and are used for the benefit of participants to make an employer match. There's no inurement to Wells Fargo. Does it reduce the amount of match that Wells Fargo, for lack of a better term, has to pay? Well, it has to reduce the dollar value, yes. The inflow from Wells Fargo, into the plan from Wells Fargo's treasury. Consistent with the design, which Wells Fargo is permitted to do and thousands of plans across the country do, right? Because the match, right? If I may take a step back for a second, the employer match is subject to a vesting schedule. And currently, I believe it's a three-year vesting schedule. It's changed over the various years. And if somebody gets a match, and assuming three years, they leave, those contributions are forfeited. They don't belong to the participant. They stay within the plan. It's Wells Fargo's money because it never vested. Saying it's Wells Fargo's money is a misuse of the word. It's the plan's money that is then used to offset the future match. But there's no reversion to Wells Fargo. But we should not overlook the fact that Mr. Mottola himself, putting aside waiver, has conceded in the court below that the antinyourment and the prohibited transaction claims are derivative of the fiduciary breach. What's the argument you just made before going back to the waiver? Is there a case I can look for that best explains that? Of the reversion of the antinyourment? Yeah. I believe it's the — there is. If Your Honor will bear with me one moment, I'm happy to provide the citation. I mean, there are several district court cases out there, I think. It is the — I want to say Yates, but I believe that that's not the case. I'll track it down. I don't want to waste your time on that. I will find it before I sit down. But I don't want to lose sight, Your Honor, on the question about the antinyourment because to say that there is a violation of the antinyourment clause or prohibited transaction rules is to say you can never use forfeitures to offset future contributions. This is not a situation where sometimes our acts violate ERISA, sometimes our acts don't. This — Mr. Mattull himself is not arguing that you can never use forfeitures. And that's just inconsistent with the idea that there's some violation of the antinyourment clause or the prohibited transaction rules. Mr. Mattull's position is it was a breach of the duty of loyalty, ultimately, to use forfeitures in the way that we did, even though the plan terms expressly provide for it. There were a couple of other things that were said in the prior argument that I wanted to address just very briefly. Mr. Mattull's counsel — I believe, Judge Gruender, you asked about what was the best case — or perhaps it was Judge Carlton, I apologize — about looking at the plan documents and interpreting them. And my colleague on the other side referred to the Braden case, which, of course, is a longstanding case out of the circuit 20-something years ago. The construction of the plan that the Eighth Circuit had in that case and the issues it took with — were revolving around applying a statute of limitations. It had nothing to do with a plan term like we have here. My colleague on the other side referred to the Smith v. UnitedHealth case. Judge Carlton, Judge Kovetz, you may recall that case. It wasn't too long ago where you looked at the plan terms in that case about cross-plan offsetting and understanding whether that plan term violated ERISA. That is a distinguished — critically distinguishing factor from the Carlson case, which was a breach of contract case, essentially a breach of the plan terms case, as opposed to deciding whether the plan term violated ERISA. And with the minute I have left, I will find you that case, Judge Kovetz, if you allow me just one second. Or maybe I won't. You know, I've got a handful here. I just was wondering if there was a particularly one-point case. Well, we talk about the anti-Nurman claim on pages 48 and 49 of our brief. And there's plenty of case law cited in there to take a look at.  If there are no further questions, I'm happy to rest my papers. All right. Very well. Thank you for your argument. Thank you.  We'll hear a brief rebuttal. Yes. Very briefly, Your Honors. Let me start with regard to the question on the interpretation of the plan. I did want to add an additional case. There's the Miners v. Walsh Fargo case, and that's 898-3D-820. There, the court addressed whether the court may consider a document in the plan, but not to resolve competing interpretations. In the couple of minutes I have left, I wanted to address the question of whether, in fact, the harm here can be allocated since the matching contributions of 6% were made. Again, the fact that there are assets come into the plan, money comes into the plan, and before there are investment decisions being made by individual plan holders, that money is put into, for example, a mutual fund. And Walsh Fargo itself in its financial statements states that those are subject to management fees. That lowers the amount of money, the net amount of money that's left over to then allocate across all the members. So that is the harm here, is that the amount that goes into the plan to set amount, then we have mutual fund and we have returns on those mutual funds that are netted against expenses. And that is a plan expense because it's not specific to any specific participant. And that's where the harm comes from. It has nothing to do to, we're not seeking a windfall here or amounts greater than would otherwise be available. And with that, unless the Court has any other questions, I will submit. Very well. Thank you for your argument. Thank you to all counsel. The case is submitted and the Court will file a decision in due course. Counsel.